UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


UNITED STATES OF AMERICA                          CRIMINAL ACTION

VERSUS                                            NO: 11-271

MARC GUYTON, ET AL.                               SECTION: "H"(3)


**ORDER AND REASONS**

Before the Court is a Motion to Suppress Evidence Obtained by the Monitoring of Privileged Communications filed by Defendant Marc Guyton (alternatively "Guyton" or "Marc"). (R. Doc. 271.) For the following reasons, the Motion is GRANTED IN PART and DENIED IN PART. The April 4, 2011 telephone conversation between Marc and his wife, Clorenza Guyton, is protected by the confidential marital communications privilege and therefore inadmissible. The Court denies Guyton's request for an evidentiary hearing, however, as the connection between the privileged conversation and any derivative evidence is sufficiently attenuated.

1

## BACKGROUND

This case arises from an alleged conspiracy to possess and distribute heroin. From March 14, 2011 through May 26, 2011, the Drug Enforcement Agency monitored Guyton's phone calls, text messages, and location information pursuant to a series of Title III wiretaps. On April 4, 2011, agents learned through monitoring Guyton's communications that he and McKenzie Weber—a co-Defendant in this case whom agents had identified as a possible drug associate prior to the Title III monitoring—planned to meet at Guyton's home. Weber texted Guyton when he arrived and agents observed Weber exit his vehicle and enter Guyton's home.

Approximately forty minutes later, Clorenza Guyton approached the residence by vehicle and telephoned Marc to inquire as to the owner of the vehicle parked in front of the house. Marc advised that the vehicle belonged to Weber. Clorenza then requested that Marc open the front door, which the latter obliged. The telephone conversation lasted approximately twelve seconds.

On October 26, 2011, Guyton and other alleged co-conspirators were charged by indictment with violations of the Federal Controlled Substances Act. (R. Doc. 1.) A superseding indictment was returned on October 26, 2012. (R. Doc. 289.) On October 10, 2012, Guyton filed a Motion to Suppress the April 4, 2011 telephone conversation as a privileged marital communication (R. Doc. 271), which the Government opposed on November 1, 2012 (R. Doc. 311). On November 28, 2012, Guyton filed a Reply. (R. Doc. 345.)

## LEGAL STANDARD

"Generally, on a motion to suppress, the defendant has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of her constitutional rights." *United States v. Guerrero–Barajas*, 240 F.3d 428, 432 (5th Cir. 2001) (citing *United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993)); *see also United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977). Evidentiary hearings on motions to suppress are not granted as a matter of course. *United States v. Harrelson*, 705 F.3d 733, 737 (5th Cir. 1983). Rather, "an evidentiary hearing is required 'when the defendant alleges sufficient facts which, if proven, would justify relief.'" *United States v. Mergist*, 738 F.2d 645, 648 (5th Cir. 1984) (quoting *Harrelson*, 705 F.3d at 737).

## LAW AND ANALYSIS

Guyton moves this Court to suppress the above-referenced April 4, 2011 telephone conversation between he and his wife and to grant an evidentiary hearing to determine any derivative evidence. Specifically, Guyton claims the conversation is protected by the evidentiary privilege afforded confidential marital communications. The government counters that suppression is inappropriate for four reasons: (1) The call is not privileged under the "joint participation" exception; (2) Agents properly minimized the conversation; (3) The conversation did not provide agents with any new information; (4) Alternatively, any new information which the conversation provided would have been inevitably discovered.

3

For the following reasons, the Court finds that the April 4, 2011 conversation is protected by the marital privilege and therefore inadmissible. The Court agrees with the government, however, that an evidentiary hearing is unnecessary under the doctrines of independent source and inevitable discovery.

I.  The Marital Privilege and "Joint Activity" Exception

Federal Rule of Evidence 501 provides in part that the privilege of a witness or a person "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States." Fed. R. Evid. 501. "One such privilege repeatedly recognized by common law principles is the marital privilege." *United States v. Mendoza*, 574 F.2d 1373, 1380 (5th Cir. 1978) (citing *Hawkins v. United States*, 358 U.S. 74, 79 (1958)). "The marital privilege encompasses two distinct privileges." *United States v. Miller*, 588 F.3d 897, 904 (5th Cir. 2009). The first privilege prohibits a spouse from testifying adversely as to the other. *United States v. Ramirez*, 145 F.3d 345, 355 (5th Cir. 1998). The second protects confidential communications, as opposed to acts, between husband and wife. *United States v. Koehler*, 790 F.2d 1256, 1258 (5th Cir. 1986). The latter privilege "may be asserted by either spouse with respect to communications that occurred during the marriage even after the marriage has terminated." *Miller*, 588 F.3d at 904. In reviewing an assertion of marital privilege, this Court is mindful that "marital communications are presumptively confidential." *Blau v. United States*, 340 U.S. 332, 333 (1951) (citing *Wolfle v. United States*, 291 U.S. 7, 14 (1934)). As Guyton seeks to suppress a conversation that occurred during the

4

marriage, the Court need only address the confidential communications privilege.

The Fifth Circuit has recognized "an exception to the confidential marital communications privilege for those 'conversations between husband and wife about crimes in which they are jointly participating.'" *Miller*, 588 F.3d at 904–05 (quoting *Ramirez*, 145 F.3d at 355). The testifying spouse need not be charged with a crime, so long as "both spouses are substantial participants in a patently illegal activity." *Ramirez*, 145 F.3d at 355 (citing *Mendoza*, 574 F.2d at 1380).

Guyton has made a *prima facie* showing that the April 4, 2011 telephone conversation was protected by the confidential communications privilege as the communication was made in private while Marc and Glorenza Guyton were married. Accordingly, the government bears the burden of demonstrating that the joint activity exception applies.

After reviewing the record, the Court concludes that the government has failed to carry its burden of proof. The government directs this Court to two previous conversations between Clorenza and Marc involving "coded and vague language" which the government contends "*suggest* that Clorenza . . . *may* have been assisting with [Guyton's] drug business." (R. Doc. 271) (emphasis added). The Court finds such conjecture on the government's part unconvincing. Moreover, as Guyton notes in his Reply, conversations between spouses, partners, and close friends are often casual and without detail, as close relationships obviate the need for formality. Accordingly, the government has failed to convince this court that Clorenza was a "substantial participant" in Guyton's alleged drug operation. Therefore, the April 4, 2011 conversation must

5

be suppressed.

II. <u>Minimization</u>

Both parties expend considerable effort in arguing whether the government has violated its statutory obligation under 18 U.S.C. § 2518(5). This statute "requir[es] electronic surveillance to 'be conducted in such a way as to *minimize* the interception of communications not otherwise subject to interception.'" *United States v. Brown*, 303 F.3d 582, 604 (5th Cir. 2002) (quoting *United States v. Bankston*, 182 F.3d 296, 307 (5th Cir. 1999) (rev'd on other grounds) (emphasis added)). A motion to suppress alleging failure to minimize typically seeks to exclude the entire wiretap, not individual communications. *See, e.g.*, *United States v. Hyde*, 574 F.2d 856; *Bankston*, 182 F.3d; *United States v. Green*, No. CRIM.A.04–295, 2005 WL 104105 (E.D. La. Apr. 29, 2005).

Ultimately, this Court does not find the minimization issue dispositive. Even if the government properly minimized the April 4, 2011 telecommunication, it would still be subject to the evidentiary privilege that protects marital communications. The government has cited no law, nor can this Court find any, which provides that a properly minimized telecommunication is *per se* admissible, evidentiary privileges notwithstanding. Therefore, this Court makes no finding as to minimization.

III. <u>Independent Source and Inevitable Discovery</u>

The exclusionary rule "generally prohibits the introduction at trial of not only primary evidence obtained as a direct result" of unlawful government conduct, "but also evidence

6

discovered later that is derivative of an illegality, or constitutes 'fruit of a poisonous tree.'" *United States v. Grosenheider*, 200 F.3d 321, 327 (5th Cir. 2000) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)). "The primary limit on this rule is that otherwise suppressible evidence will still be admitted if the connection between the alleged illegality and the acquisition of the evidence is 'so attenuated as to dissipate the taint.'" *Grosenheider*, 200 F.3d at 327 (quoting *Nardone v. United States*, 308 U.S. 338, 341 (1939)). This derivative evidence analysis ensures that the prosecution is not put in a worse position than it would have been if no illegality had transpired. *See Nix v. Williams*, 467 U.S. 431, 443–44 (1984).

Having established that monitoring the April 4, 2011 telecommunication was a poisonous tree, Guyton seeks to suppress all fruits derived therefrom. Specifically, Guyton alleges that without listening to the privileged phone call, agents would not have identified Weber as the person inside Guyton's home. The government argues that it identified Weber from sources independent of the alleged illegality or alternatively that his identity would have been inevitably discovered. For the following reasons, the Court agrees with the government and therefore denies Guyton's request for an evidentiary hearing.

A. *Independent Source Doctrine*

The independent source doctrine "allows the 'introduction of unlawfully discovered evidence when the police have acquired that evidence through a distinct, untainted source.'" *United States v. Zavala*, 541 F.3d 562, 577–78 (5th Cir. 2008) (quoting *Grosenheider*, 200 F.3d at

7

327). For this doctrine to apply, "the evidence obtained through the independent source must be 'identical to the evidence unlawfully acquired.'" *Zavala*, 541 F.3d at 578 (quoting *Murray v. United States*, 487 U.S. 533, 538 (1988)).

The Court is satisfied that the government learned Weber's identity through means wholly independent from the privileged communication and therefore denies Guyton's request for an evidentiary hearing. As the government notes in its opposition, agents already knew from the Title III wiretaps that Weber was planning to meet Guyton at the latter's home on April 4, 2011. In anticipation of this meeting, agents established physical surveillance and observed Weber—whose photograph agents had previously obtained—exit his vehicle and enter Guyton's home. Moreover, prior to entering the home, agents intercepted a text message from Weber informing Guyton of his arrival. After the April 4, 2011 meeting, agents followed Weber's vehicle to the Woodland Apartment Complex. By checking his license tags, agents learned that Weber resided in this building.

 B. *Inevitable Discovery Doctrine*

"The inevitable discovery doctrine . . . is in reality an extrapolation from the independent source doctrine." *Murray*, 487 U.S. at 539. It applies when the government demonstrates by a preponderance of the evidence that "(1) there is a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of police misconduct and (2) the Government was actively pursuing a substantial alternate line of investigation at the time

of the [police misconduct]." *United States v. Jackson*, 596 F.3d 236, 241 (5th Cir. 2010) (citing *United States v. Lamas*, 930 F.2d 1099, 1102 (5th Cir. 1991)).

For much the same reasons as outlined in the previous Subsection, the Court finds that the record contains ample evidence to demonstrate a "reasonable probability" that any evidence derived from the April 4, 2011 telecommunication would have been discovered by lawful means. Moreover, the government was pursuing multiple, substantial alternate lines of investigation such as obtaining Title III wiretaps on numerous other phones associated with Guyton and other co-Defendants, monitoring the location information of certain co-Defendants through Title III wiretaps as well as through Global Positioning Satellite devices installed on certain vehicles, establishing physical surveillance in various locales, and executing controlled narcotics purchases through undercover officers. The Court concludes that the inevitable discovery of any derivative evidence precludes the need for an evidentiary hearing.

## CONCLUSION

For the reasons previously stated, the Motion to Suppress is granted in part and denied in part.

New Orleans, Louisiana, on this 22nd day of January, 2013.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**